Ernest E. Rollman and Hilda S. Rollman et al. [1] v. Commissioner. Rollman v. Commissioner
Docket Nos. 51963, 51974-51976.
United States Tax Court
T.C. Memo 1957-182; 1957 Tax Ct. Memo LEXIS 68; 16 T.C.M. (CCH) 817; T.C.M. (RIA) 57182; September 27, 1957
*68 Held: That the Rajeh patent was not property held primarily for sale to customers in the ordinary course of business, and the gain from the sale of said patent is to be considered as gain from the sale of a capital asset held for more than six months. David Alter, Esq., 274 Madison Avenue, New York, N. Y., for the petitioners. Hubert E. Kelly, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: This case was originally reported at , and is here on remand from the Court of Appeals for the Fourth Circuit ( ). The only issue before us is whether the gain from the sale of the Rajeh patent is to be considered as long-term *69 capital gain, or whether said patent was property held primarily for sale to customers in the ordinary course of business. Findings of Fact We incorporate herein by reference all of the facts here material which we originally found in . The Rajeh patent was sold by petitioners' partnership after it had been held for more than six months. The said patent was not property held primarily for sale to customers in the ordinary course of their trade or business. Opinion In our original opinion () we held that the agreement dated December 19, 1940, relating to the Rajeh patent was a licensing agreement and not a sale. We accordingly treated the accruing proceeds as ordinary income in the nature of royalties. Having held that there was no sale, it was unnecessary for us to consider respondent's alternative contention to the effect that even if there were a sale, the gain should be treated as ordinary income on the theory that the patent had been held primarily for sale to customers in the ordinary course of a trade or business. The Court of Appeals reversed us, holding that the partnership had transferred all of the substantial rights *70 in the patent, and that such transfer constituted a sale. The Appellate Court therefore remanded the case for our determination of whether or not the sale resulted in long-term capital gain. In this respect, the Court said, in part: "The Commissioner makes the additional point that even though the transfer of the patent constituted a sale, nevertheless, it was not a sale of a capital asset within the meaning of § 117(a) of the 1939 Code, because it constituted a sale to customers in the ordinary course of The Rollmans' trade or business, which is excluded by the express terms of the section. Since the Tax Court held that the transfer was not a grant of all the substantial rights of The Rollmans in the patent it found it unnecessary to consider this contention and made no findings in respect thereto. The Commissioner urges that, in case the Tax Court's decision is reversed on the main point, the case should be remanded to the Tax Court to determine this additional contention. Our attention has not been directed to any substantial evidence indicating that the transfer of the Rajeh patent was made in the course of the taxpayers' business, but since the Tax Court made no findings in *71 respect thereto its decision will be reversed and the case remanded for further proceedings, not inconsistent with this opinion." It is immaterial, for practical purposes, whether we regard the issue as one arising under section 117(a), or under section 117(j), both of the Internal Revenue Code of 1939. Respondent's only contention is that the patent was held by petitioners' partnership primarily for sale to customers in the ordinary course of its trade or business, and we confine our discussion to that issue. If respondent's contention is sustained, the gain must be treated as ordinary income and the petitioners would not be entitled to long-term capital gain treatment under either section 117(a) or 117(j). If the patent was not so held, it is clear that the gain must be treated or considered as gain from the sale of a capital asset held for more than six months. The burden of proof is, of course, upon petitioners, and in our opinion they have sustained their burden. The Rollmans was first formed as a partnership in Brussels, Belgium, on April 13, 1936, then including as partners Hans Rollman, now deceased, father of petitioners Heinz and Ernest Rollman, Heinz and Ernest, and *72 their cousins Walter and Curt Kaufman. Prior to formation of the partnership, petitioners had lived in Germany and had been employed there in several shoe factories owned by Hans Rollman. While so employed, petitioners were trained in the various production methods of leather and rubber shoe manufacture. In 1935, all of petitioners' and their families' properties, including the shoe factories, other equipment and patents owned by them, were confiscated by the German Government. Petitioners and their families were forced to flee from Germany to Brussels, Belgium. There they formed The Rollmans to utilize their knowledge and skill in shoe manufacture on behalf of other organizations, being unable for lack of funds to reenter the shoe manufacturing business. Petitioners and Hans Rollman, through The Rollmans, became technical advisers to the shoe industry and also embarked on a program of research to develop new processes of shoe manufacture and sale. The business of the partnership consisted largely of rendering technical assistance and "know-how" services to shoe manufacturers and of granting limited licenses to such manufacturers for the production of shoes under patents developed *73 by The Rollmans. On September 6, 1938, the partnership was issued a United States patent, No. 2,129,106, referred to herein as the Rajeh patent, on a previously perfected process relative to the manufacture of rubber footwear. The patent had been assigned to the partnership by Hans Rollman and Andreas Szerenyi. In 1939, Heinz Rollman, anticipating war in Europe, secured from each of the partners of The Rollmans an assignment to himself of certain patent applications and patents, including the Rajeh patent, owned by The Rollmans, authorizing him to dispose of them and execute other appropriate agreements in respect thereto on behalf of the partnership. Heinz came to the United States to establish a business here on behalf of The Rollmans. Heinz attempted to arrange with Leo Weill for The Rollmans to engage in the manufacture of shoes on the basis of an exchange of the Rajeh patent for one-half of the common stock of a corporation to be organized to engage in such manufacture. This arrangement was not consummated. Heinz then negotiated with Rikol, Inc. (hereinafter called Rikol), a corporation controlled by Leo Weill, for the partnership's customary know-how and technical assistance *74 service and a license under the Rajeh patent. This plan also was not completed, largely because the manufacture of shoes under the Rajeh patent required, in addition to special shoe machinery, a supply of uncured rubber compound which would involve the use of certain rubber machinery costing about $250,000. Rikol could not finance the building of a rubber plant, which would have been necessary to meet this supply, in addition to the required shoe manufacturing factory. Consequently, negotiations were undertaken between Rikol, Heinz (on behalf of The Rollmans), and the Dayton Rubber Company (hereinafter called Dayton) for Dayton to build the rubber plant, lease space to Rikol, and furnish Rikol's requirements for uncured rubber compound for manufacture under the Rajeh patent. Dayton, while interested in the venture, would not agree to make the required investment until it had investigated the limits of the claim of the Rajeh patent. Dayton also wanted to review the agreement proposed by Heinz to grant a limited license under the Rajeh patent to Rikol, since Dayton was then, at least, contemplating a possible complete transfer of all rights under the patents to Rikol in order to safeguard *75 the proposed investment in a rubber plant. The investigation disclosed the existence of possible conflicting patents which Ludwig H. Grunebaum and a group of persons whom he represented had acquired after the German Government confiscated petitioners' and Hans Rollman's outstanding United States patents in 1935. Heinz thereafter contacted the Grunebaum group to arrange for a transfer of its patent rights along with the transfer of the Rajeh patent. Finally, on December 19, 1940, Heinz, acting on his own behalf and that of the partnership, together with Grunebaum, entered into the agreement with Rikol (the relevant terms of which are set forth in our Findings of Fact at , under which all of the substantial rights of the partnership in the Rajeh patent were sold. We think that the foregoing circumstances clearly demonstrate not only that the patent was not held primarily for sale to customers in the ordinary course of a trade or business, but that the partnership avoided any effort to sell as long as there was any real prospect of their getting back into the business of manufacturing shoes either as a partnership or through an interest in a corporation, *76 or by negotiating some kind of technical assistance agreement accompanied by an arrangement for licensing the patent. When these extended efforts failed, they finally disposed of the patent by the agreement of December 19, 1940. Considering the background of avoiding any effort to sell, we think it is clear that the final action taken by the partnership falls far short of demonstrating that the patent was held primarily for sale in the ordinary course. On the contrary, it is our view that the affirmative facts support the opposite conclusion. See . There being no further issue in controversy, we hold that the gains in question are to be considered as long-term capital gains. In view of our findings and the conclusion we have reached, it is unnecessary for us to consider petitioners' motion for additional findings of fact. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Curt E. Kaufman and Louise Kaufman, Husband and Wife, Docket No. 51974; Heinz W. Rollman and Tania Rollman, Husband and Wife, Docket No. 51975; Walter Kaufman and Ellen Kaufman, Husband and Wife, Docket No. 51976.↩